UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

DAVANH PHOUANGPHET,

        Petitioner,                        Case No. 1:17-cv-271

v.                                         Honorable Gordon J. Quist

SHANE JACKSON,

        Respondent.

_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Davanh Phouangphet is incarcerated with the Michigan Department of Corrections at the Carson City Correctional Facility (DRF) in Carson City, Michigan. On May 17, 2013, an Ottawa County Circuit Court jury found Petitioner guilty of first-degree murder, MICH. COMP. LAWS § 750.316. On May 28, 2013, the court sentenced Petitioner to life imprisonment without parole.

On March 17, 2017, Petitioner filed his habeas corpus petition raising 2 grounds for relief, as follows:

    I.      The trial court erred in deciding that evidence of Petitioner's mental health status should be barred, which prevented Petitioner from presenting the defense of insanity.

    II.     Trial counsel was ineffective for failing to call defense experts.

(Pet., ECF No. 1, PageID.6-7.) Respondent has filed an answer to the petition (ECF No. 11) stating that the grounds should be denied because they are procedurally defaulted and meritless. Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996,

Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are procedurally defaulted. Accordingly, I recommend that the petition be denied.

## Discussion

### I.      Factual allegations

On January 23, 2012, someone doused Petitioner's housemate/landlady with lighter fluid and set her on fire. She died from her injuries the following week.

The evidence implicating Petitioner for the crime was significant. As recounted by the Michigan Court of Appeals, that evidence showed:

> Two days before the assault, defendant was heard saying, "something is going to happen on Monday [January 23] and the police is going to come and get [me]." On January 23, the day of the assault, a witness heard the victim and defendant arguing. Two of defendant's housemates testified that, about an hour later, at 10:00 a.m. on January 23, they awoke to hear the victim screaming. One of the housemates saw defendant standing near the victim, who was on fire. Defendant was not rendering aid and appeared to have a lighter in his right hand; he then fled the house while the housemates attempted to aid the victim. One housemate attempted to put the fire out but failed. The other housemate was able to get the victim to a downstairs bathroom where the flames were extinguished in the shower.
>
> After police performed an initial investigation, they discovered that the fire started in the victim's upstairs bedroom. Police recovered two Coleman fuel cans, a Wal-Mart receipt in defendant's bedroom disclosing the purchase of two Coleman fuel cans and two four-hour burn logs four days before the assault, a Wal-Mart bag, and three lighters. A fire expert testified that the fire was caused by an ignitable liquid pour and that the victim was on her back in her bedroom when the pour occurred. The expert's analysis was consistent with the victim's injuries—she was burned on 55 to 60 percent of her body. Additionally, fingerprints found on one of the Coleman fuel cans matched defendant's fingerprints. Further, defendant told police, "I couldn't take it anymore. She always rags on me."

(Mich. Ct. App. Op., ECF No. 12-12, PageID.1186.)

Not surprisingly, Petitioner's trial counsel raised the insanity defense and called into question Petitioner's competency to stand trial. (Competency Hr'g Tr., ECF No. 12-5, PageID.318.) Petitioner was evaluated; however, the results of the evaluations did not support

2

insanity as a defense nor did they call into question Petitioner's competence to stand trial. (*Id*.) Accordingly, Petitioner's counsel, with Petitioner's expressed consent, withdrew the defense. (*Id*., PageID.318-319.)

Although Petitioner withdrew his insanity defense, his counsel still intended to explore Petitioner's mental health during trial to call into question Petitioner's intent to kill the victim. The prosecutor, relying on *People v. Carpenter*, 627 N.W.2d 276 (Mich. 2001), asked the trial court to preclude Petitioner "from inquiring of witnesses about the [Petitioner] being "crazy" or talking to objects or demons or hearing voices from people that are not present." (Mot. in Limine Tr., ECF No. 12-6, PageID.327.) The *Carpenter* court held:

> The Legislature has enacted a comprehensive statutory scheme setting forth the requirements for and the effects of asserting a defense based on either mental illness or mental retardation. We conclude that, in so doing, the Legislature has signified its intent not to allow evidence of a defendant's lack of mental capacity short of legal insanity to avoid or reduce criminal responsibility by negating specific intent. Rather, the insanity defense as established by the Legislature is the sole standard for determining criminal responsibility as it relates to mental illness or retardation.

*Carpenter*, 627 N.W.2d at 285. The prosecutor argued that Petitioner impermissibly sought to introduce mental health evidence for the purpose of reducing his responsibility for the crime.

Petitioner's counsel argued that to preclude evidence that Petitioner's mental illness diminished his capacity to form the intent necessary to find first-degree murder would be a denial of due process. (Mot. in Limine Tr., ECF No. 12-6, PageID.329-331.) In addition, Petitioner's counsel asked the court to consider a specific event:

> [T]here was a specific incident alleged by one of the witnesses where he said he saw my client, I believe it was, rolling through a bonfire. At the house in question, they apparently had a fire pit out in back and bonfires were regular activities. And an individual testified that he saw my client rolling through a bonfire, which I tend – which I suggest tends to go to a lack of understanding of how dangerous fire is, which might mitigate between a first and a second degree murder.

3

(*Id.*, PageID.331.) Counsel indicated he would introduce the evidence to show Petitioner's "lack of appreciation as to how damaging fire or deadly fire can be, which then with if there's an intent to maim or injure rather than an intent to kill, then the appropriate verdict in that case would be a second degree rather than a first degree." (*Id.*, PageID.332.) The court asked counsel if he had an expert to link Petitioner's behavior rolling through the fire with an intent to injure instead of kill. (*Id.*, PageID.335.) Counsel did not. (*Id.*)

Despite counsel's "valiant attempts to distinguish *Carpenter* from the facts at hand," the trial court concluded that *Carpenter* precluded the admission of the anticipated testimony for the purpose described. (*Id.*, PageID.336.) Additionally, with regard to the rolling-through-the-fire evidence, the Court concluded it would be inadmissible for the independent reason that it would be irrelevant absent expert testimony to link the behavior to Petitioner's intent. (*Id.*, PageID.336-337.)

The jury heard testimony over the course of four days. Petitioner did not testify. The jury deliberated for a couple of hours before finding Petitioner guilty of first-degree murder. Petitioner's sentence—imprisonment for life without eligibility for parole—was statutorily mandated. MICH. COMP. LAWS § 750.316(1).

Petitioner directly appealed his conviction to the Michigan Court of Appeals. In a brief filed with the assistance of counsel, Petitioner argued there was insufficient evidence to support his conviction of first-degree murder. (Def.'s Br., ECF No. 12-12, PageID.1189.) By unpublished opinion entered November 20, 2014, the Michigan Court of Appeals determined there was sufficient evidence to support Petitioner's conviction and affirmed the trial court. (Mich. Ct. App. Op., ECF No. 12-12, PageID.1185-1186.) Petitioner then raised the sufficiency issue in a pro per application for leave to appeal in the Michigan Supreme Court. (Def.'s App. for Leave to

Appeal, ECF No. 12-13, PageID.1240.)  The supreme court denied leave by order entered May 28, 2015.  (Mich. Ord., ECF No. 12-13, PageID.1238.)  Petitioner did not file a petition for certiorari in the United States Supreme Court.  (Pet., ECF No. 1, PageID.3.)

Petitioner returned to the trial court, filing a motion for relief from judgment on September 12, 2015, raising three issues:

> I.  Trial counsel was ineffective for failing to object to clear judicial misconduct where the trial judge barred evidence of defendant's mental health status.
>
> II. Trial judge violated defendant's right to present his defense of insanity.
>
> III. Appellate counsel provided ineffective assistance of counsel by neglecting to raise on direct appeal both of the preceding issues.

(Mot. for Relief from J., ECF No. 12-14.)  The trial court denied relief by order entered October 6, 2015, because Petitioner had failed to establish cause for failing to raise these issues on direct appeal.  (Ottawa Cnty. Cir. Ct. Order, ECF No. 12-15, PageID.1297-1301.)

Petitioner then sought leave to appeal in the Michigan Court of Appeals raising two issues:

> I.  Was there sufficient evidence to find the defendant guilty of first degree premeditated murder beyond a reasonable doubt?
>
> II. Was trial counsel ineffective in failing to move the court for the need of experts for the defense?

(Pet'r's App. for Leave to Appeal, ECF No. 12-16, PageID.1304.)  By order entered April 26, 2016, the Michigan Court of Appeals denied leave to appeal "because defendant ha[d] failed to establish the trial court erred in denying the motion for relief from judgment."  (Mich. Ct. App. Order, ECF No. 12-17, PageID.1302.)

Petitioner sought leave to appeal to the Michigan Supreme Court raising the following issues:

5

> I. Was defendant denied his Sixth Amendment right to the effective assistance of trial counsel?
>
> II. Was defendant denied his Sixth Amendment right to the effective assistance of appellate counsel?

(Pet'r's App. for Leave to Appeal, ECF No. 12-17, PageID.1328.) In his application, Petitioner focuses his argument on the claim that trial counsel should have obtained an expert to testify regarding Petitioner's lack of comprehension that fire created a life-threatening danger. Petitioner argues that such testimony would have defeated the prosecutor's motion in limine, and that the prosecution would not have been able to establish the necessary intent to support conviction of first-degree murder. Instead, if his trial counsel had rendered effective assistance and obtained expert testimony, Petitioner contends, he would have been convicted of second-degree murder. Petitioner claims further that it was ineffective assistance by appellate counsel to not raise trial counsel's failure to obtain expert testimony. By order entered November 30, 2016, the Michigan Supreme Court denied relief. (Mich. Order, ECF No. 12-17, PageID.1326.)

Petitioner timely filed his habeas petition in this Court on March 17, 2017.

## II.    AEDPA standard

The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court

6

proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655. Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in

7

their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### III.  Failure to exhaust state court remedies

Before the court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. *See O'Sullivan*, 526 U.S. at 842; *Picard v. Connor*, 404 U.S. 270, 275-77 (1971) (cited by *Duncan v. Henry*, 513 U.S. 364, 365 (1995) and *Anderson v. Harless*, 459 U.S. 4, 6 (1982)). To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court. *Duncan*, 513 U.S. at 365-66; *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845.

8

Petitioner raises two issues in his habeas petition. Neither issue has been presented to all levels of the state appellate system. In his first issue, Petitioner attacks the trial court's ruling on the prosecutor's motion in limine. Petitioner did not raise the issue on his direct appeal. He raised it for the first time in the trial court on his motion for relief from judgment. But, he abandoned the issue in his application for leave to appeal to the Michigan Supreme Court. The application states: "Defendant submits that the court [of appeals] was correct in regard to his claim that the trial court was in error for judicial misconduct, however, Defendant's claim of both trial counsel and appellate counsel being ineffective must stand." (App. for Leave to Appeal, ECF No. 12-17, PageID.1329.)

With regard to Petitioner's second habeas issue, that trial counsel was ineffective for failure to obtain defense experts, Petitioner raised it for the first time in his application for leave to appeal the trial court's denial of his motion for relief from judgment, filed in the Michigan Court of Appeals. Petitioner never raised the issue in the trial court.

An applicant has not exhausted available state remedies if he has the right under state law to raise, by any available procedure, the question presented. 28 U.S.C. § 2254(c). Exhaustion is only a problem, however, if there is a state court remedy available for Petitioner to pursue, thus providing the state courts with an opportunity to cure any constitutional infirmities in the state court conviction. *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). If no further state remedy is available to Petitioner, exhaustion does not present a problem, but the claim is procedurally defaulted and the federal court must determine whether cause and prejudice exists to excuse the failure to present the claim in state court. *Id.*

Under Michigan law effective August 1, 1995, a defendant may file one motion for relief from judgment under Michigan Court Rule 6.500 *et. seq.* *See* MICH. CT. R. 6.502(G)(1). Petitioner already has filed his one allotted motion. He therefore has no available remedy. At this juncture, the court must consider whether there is cause and prejudice to excuse Petitioner's failure to present the claims in state court. *See Gray v. Netherland*, 518 U.S. 152, 161-62 (1996); *Rust*, 17 F.3d at 160.

### IV.  Cause

To show cause sufficient to excuse a procedural default, Petitioner must point to "some objective factor external to the defense" that prevented him from raising the issue. *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *see McCleskey v. Zant*, 499 U.S. 467, 497 (1991). A petitioner who fails to demonstrate cause and prejudice cannot have a cognizable claim. *Gray*, 518 U.S. at 162. Further, where a petitioner fails to show cause, the court need not consider whether he has established prejudice. *See Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982); *Leroy v. Marshall*, 757 F.2d 94, 100 (6th Cir. 1985).

Petitioner offers no cause for his failure to raise the "defense expert" issue in the trial court or the "erroneous grant of the motion in limine" issue in the Michigan Supreme Court. Absent cause, Petitioner's procedural default bars this Court's habeas review of his conviction.

### V.  Prejudice

Even if Petitioner were able to establish cause for his procedural defaults, he has failed to demonstrate any prejudice. Prejudice requires the Petitioner to show that the alleged error "worked to his *actual* and substantial disadvantage." *Perkins v. LeCureux*, 58 F.3d 214, 219 (6th Cir. 1995) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). "'[T]he prejudice component of the cause and prejudice test is not satisfied if there is strong evidence of Petitioner's

guilt and a lack of evidence to support his claim.'" *Perkins*, 58 F.3d at 219 (quoting *Rust*, 17 F.3d at 161-62).  Each of Petitioner's claims is patently without merit.

### A.   Counsel's failure to secure expert testimony

Petitioner contends that because his trial counsel failed to obtain expert testimony, the jury was barred from hearing about Petitioner's mental illness.  Petitioner misreads the trial court's ruling on the prosecutor's motion in limine.  Although the trial court offered the lack of an expert as an independent basis to exclude the rolling-through-the-fire evidence, the court also determined that *Carpenter* excluded that evidence standing alone:

> Regarding Mr. Hamilton's valiant attempts to distinguish *Carpenter* from the facts at hand, the Court does not deem that . . . [it] has been distinguished . . . the Court finds that Mr. Hamilton is seeking to use this evidence to effect or negate specific intent, which is specifically precluded by *Carpenter*."

(Mot. in Limine Tr., ECF No. 12-6, PageID.336.)  Therefore, even if counsel had obtained expert testimony to establish the link, the evidence would have been excluded under *Carpenter*.

### B.   The trial court's ruling on the motion in limine

Petitioner repeats his state court concession on this issue in his most recent filing in this Court.  (*See* Objections, ECF No. 13, PageID.1357 ("Defendant submits that the court was correct in regard to his claim that the trial court was in error for judicial misconduct . . . . ")).  His concession is well-grounded.

To the extent Petitioner challenges the application of *Carpenter* to preclude evidence of his diminished capacity under state law, his claim is not cognizable on habeas review.  "[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'"  *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)).  A habeas petition must "state facts that point to a 'real possibility of constitutional error.'"  *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977)

(quoting Advisory Committee Notes on Rule 4, Rules Governing Habeas Corpus Cases). The federal courts have no power to intervene on the basis of a perceived error of state law. *Wilson*, 562 U.S. at 5; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 67-68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

Moreover, the state courts have upheld the trial court's exclusion of the diminished capacity evidence. The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983). The Sixth Circuit repeatedly has recognized "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'" *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw*, 546 U.S. at 76).

Finally, as a matter of federal constitutional law, the *Carpenter* court's rejection of diminished capacity as a defense has been upheld by the Supreme Court. In *Metrish v. Lancaster*, 569 U.S. 351 (2013), the Supreme Court concluded that application of *Carpenter*, even retroactively, to preclude a diminished capacity defense did not violate due process.

VI. Actual innocence

Petitioner also has not demonstrated that manifest injustice would result because he has not made a colorable claim of innocence; he has not shown that any constitutional error "probably" resulted in the conviction of one who was actually innocent. *Schlup v. Delo*, 513 U.S. 298, 322 (1995) (citing *Murray*, 477 U.S. at 495). This requires a showing "that 'in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Coleman*, 244 F.3d at 540 (quoting *Schlup*, 513 U.S. at 329).

Petitioner now acknowledges that he burned his landlady. His only contention is that he did not intend to kill her. He has not made a colorable claim of innocence.

12

## Certificate of Appealability

Unless a certificate of appealability is issued, an appeal of the denial of a habeas corpus petition may not be taken. 28 U.S.C. § 2253(c)(1). A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467.

I have examined each of Petitioner's claims under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists would not conclude that this Court's denial of Petitioner's claims is debatable or wrong.

**Recommended Disposition**

For the foregoing reasons, I respectfully recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied. *See Slack v. McDaniel*, 529 U.S. 473 (2000).


Dated: March 5, 2018                                             /s/ Ray Kent
                                                                 United States Magistrate Judge


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you. 28 U.S.C. § 636(b)(1)(c); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).